# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TODD D.**[1], <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 3:17-cv-1119-SI <br><br> **OPINION AND ORDER** |

Jenna L. Mooney, 1300 S.W. Fifth Avenue, Suite 2300, Portland, OR, 97201. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Catherine Escobar, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Todd D. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on October 22, 2012, alleging disability beginning on December 24, 2007. AR 214-15. He filed an application for SSI on January 10, 2014, alleging disability beginning on January 1, 2012.[2] AR 217-22. Plaintiff was born on May 15, 1963, and he was 44 years old as of the alleged disability onset date for DIB and was 49 years old as of the alleged disability onset date for SSI. AR 276. He alleged disability due to depression, irritable bowel syndrome, arthritis, blood disorder, chronic obstructive pulmonary disease ("COPD"), memory loss, pelvic injury, knee injury, back injury, and neck injury. AR 293. The Commissioner denied his application initially and upon reconsideration. AR 146, 152. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The ALJ found Plaintiff not disabled from December 24, 2007, through the date of the decision, January 12, 2016. *Id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 3. Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

---

[2] The Administrative Law Judge stated in his opinion that Plaintiff filed his application for SSI on November 6, 2013, and that he alleged the same disability onset date as in his DIB application, December 24, 2007. Plaintiff's SSI application in the record, however, is dated January 10, 2014, and alleges disability beginning on January 1, 2012. On November 6, 2013, Plaintiff filed a request for a hearing. It appears that the ALJ's notation relating to Plaintiff's SSI application was a scrivener's error.

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

> 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As a preliminary matter, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. AR 25. Thus, for his DIB

claim, Plaintiff must establish disability on or before that date. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date through his date last insured. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: depression, personality disorder, cervical degenerative disc disease, irritable bowel syndrome, COPD, and erythocytosis. AR 26. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations in 20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926. AR 27. The ALJ then determined that Plaintiff had an RFC to perform light work, with some additional restrictions:

> The claimant can occasionally perform overhead reaching bilaterally. The claimant should avoid concentrated exposure to pulmonary irritants and hazards. The claimant can occasionally climb ladders, ropes, or scaffolds, kneel, crouch, and crawl. The claimant is limited to simple, routine, repetitive tasks consistent with unskilled work. The claimant is limited to occasional contact with the public and coworkers.

AR 29.

At step four, the ALJ determined that Plaintiff's RFC precluded him from performing any of his past relevant work. AR 38. At step five, however, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail room sorter, route clerk, and office helper. AR 39. Thus, the ALJ concluded that Plaintiff was not disabled from December 24, 2007, through the date of the decision, January 12, 2016. *Id.*

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that Plaintiff was not disabled. Plaintiff contends that the ALJ made the following legal errors in evaluating his case: (A) concluding that Plaintiff's impairments did not meet the criteria set forth in 20 C.F.R. Part

PAGE 6 – OPINION AND ORDER

404, Subpt. P, App'x 1, § 12.04 ("Listing 12.04"); (B) failing properly to weigh medical opinion evidence from Plaintiff's therapists, Stephanie Wells,[3] M.S., LPC, and Kylee Brandt, M.A., Q.H.M.P.; (C) failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony; and (D) failing to include all of Plaintiff's mental limitations in the hypothetical posed to the vocational expert.

## A. Step Three Finding Regarding Listing 12.04

### 1. Legal Standards

"Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir 2013) (quoting *Sullivan v. Zebley*, 492 U.S. 521, 532 (1980)). To find Plaintiff disabled under listed impairment 12.04, Plaintiff's mental disorder must satisfy the requirements under paragraphs A and B or paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Here, Plaintiff contends that his impairments meet the requirements of paragraphs A and C. Plaintiff has not, however, contended that he meets the Paragraph B requirements. Therefore, if Plaintiff does qualify as disabled under a listed impairment, it must be because he meets the requirements of Paragraph C. Accordingly, the Court will analyze whether he has met the requirements of Paragraph C.

To satisfy the paragraph C criteria, a plaintiff must provide evidence of a " [r]epeated episodes of decompensation, each of extended duration," or "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate," or "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement,

---
[3] Ms. Wells is also referred to as Stephanie Rope in the record in various areas of the record. For clarity, this opinion will refer to her as Ms. Wells throughout.

with an indication of continued need for such arrangement." 20 C.F.R. Pt. 404, Subpt. P, App'x 1.[4] Further, a plaintiff's history of mental disorder must be "of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication of psychosocial support." *Id*.

### 2. Analysis

The ALJ specifically stated that he "considered whether 'Paragraph C' criteria are satisfied" and ultimately determined that "the evidence fails to establish that the presence of 'Paragraph C' criteria." AR 28. Plaintiff contends that this finding directly contradicts the testimony of Robert Davis, Ph. D. Plaintiff argues only that he meets the Paragraph C criteria because he has a current history of 1 or more years' inability to function outside a highly supportive living arrangement.

Plaintiff's reliance on Dr. Davis's testimony is unfounded. First, as described at length below, the ALJ awarded little weight to Dr. Davis's testimony because it is not supported by treatment records. AR 26. In addition, Plaintiff has mischaracterized Dr. Davis's testimony regarding Paragraph C. Plaintiff alleges that Dr. Davis "testified that Mr. Denning's conditions would meet the 'C' criteria Medical Listing 12.04." In actuality, Dr. Davis testified that he "[didn't] know . . . hadn't thought about that," but then stated that Plaintiff's relationship with his son "*seems* to be a kind of protective relationship, and so I *would be inclined* to think that that *might well* meet the C criteria." AR 63 (emphasis added). Because the ALJ awarded little weight to Dr. Davis's opinion and Plaintiff overstates Dr. Davis' level of certainty regarding Paragraph C, Plaintiff's argument is unpersuasive. Plaintiff also contends that the ALJ's opinion regarding

---

[4] The regulation was amended in 2017. Because Plaintiff's case was decided in 2016, the 2016 version of the regulation governs this analysis. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (effective August 12, 2015 to May 23, 2016).

Paragraph C is conclusory. The ALJ's findings must be upheld if supported by inferences reasonably drawn from the record. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F 3d. 1190, 1193 (9th Cir. 2004). Although a court is not permitted to affirm the Commissioner on a ground (or reason) upon which the Commissioner did not rely, a court is nevertheless permitted to consider additional evidence supporting the ground provided by the ALJ. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) ("Although the ALJ did not cite the POMS, . . . [t]he Commissioner is not asking this court to invent a new ground of decision; rather, the POMS simply is additional support for the Commissioner's and the ALJ's position."). Here, although the ALJ did not specifically describe the evidence he relied upon to determine that Plaintiff did not meet the Paragraph C criteria, there is substantial evidence supporting the ALJ's finding.

Plaintiff argues that he meets Paragraph C because he has a "current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement." Plaintiff's treatment records provide a detailed account of his living arrangements and his ability to function during the relevant time period. Between 1999 and 2013, Plaintiff lived with his son and his mother in her home. AR 1379. After his mother suffered from several strokes, Plaintiff left his job and became her primary caretaker. AR 834. Although Plaintiff's mother moved into an acute care facility in 2013, Plaintiff continued to live in his mother's home without her. AR 1011.

Later in 2013, Plaintiff's mother passed away. Plaintiff reported that after living in his mother's home for a year after her death, Plaintiff's brother sold the home, and Plaintiff inherited one-third of the profit. AR 1379, 1389. Although Plaintiff received compensation for the property, he reported that he was distressed about being forced to move and was unsure where he

would live. AR 1011. Subsequently, he moved in with a friend for five months. AR 1389-90. Approximately one year after the sale of his mother's home, in May 2015, Plaintiff told his therapist that Plaintiff was still waiting for the proceeds from the sale so that he could move in to his own trailer. He reported that he was worried because he had yet to find a trailer park that would accept his residency with his felony vehicular manslaughter conviction. AR 1390. Plaintiff also reported that he has not had a driver's license since 2009, his son usually drives him to appointments, and otherwise he takes public transportation. AR 1384.

At the hearing, Plaintiff indicated that he was living with his son. AR 83. Plaintiff stated that his mother's death "put [him] in a situation where . . . if [he] wasn't living at [his] son's house, [he] would be living on the streets." AR 88. "Because [he didn't] have any other access to any means . . . of self-sustainment." AR 88.

It appears from Plaintiff's testimony and treatment records that before his mother's death he was his mother's primary caretaker. After she passed, Plaintiff was disappointed that he had trouble finding a place to live and could not support himself financially, but there is no evidence that he expressed a need for support other than financial assistance. Plaintiff indicated that after he received the proceeds from the sale of his mother's home, he wanted to buy his own trailer. His barrier to living was finding a trailer park that would accept him with his felony conviction, not an inability to function on his own. Additionally, Plaintiff regularly uses public transportation, performs household chores, and prepares meals. Thus, it appears that Plaintiff is able to function outside a highly supportive living arrangement, and the ALJ's paragraph C determination is supported by substantial evidence.

Plaintiff does not argue that he meets the other Paragraph C criteria, repeated episodes of decompensation of extended duration or residual disease process that has resulted in marginal

adjustment that even minute changes in Plaintiff's environment would lead to decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1Dr. Davis, upon whom Plaintiff relies to argue that he does meet the Paragraph C criteria, also stated that Plaintiff had "no repeated episodes of decompensation." AR 36. Similarly, State agency medical consultant Dr. Anderson stated that Plaintiff had no repeated episodes of decompensation. AR 37, 122. Because Plaintiff has not attempted to argue that he meets the Paragraph B requirements, analysis of the Paragraph A requirements is not necessary.

## B. Weighing of "Other" Medical Sources

### 1. Legal Standards

Social Security Rule ("SSR") 06-03p,[5] in effect at the time Plaintiff filed his claim, defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d) (2016). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p, 2006 WL 2329939 at *5.

---

[5] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 Fed. Reg. 5844, 5132, 15263.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

In considering how much weight to give "other" medical source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion is with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute the opinion." SSR 06-03p, 2006 WL 2329939 at *3-4. The fact that a source is an "acceptable medical source" sometimes entitles that source's opinions to more weight than the opinions from other medical sources. *Id.* Nonetheless, in certain instances, after applying the factors for weighing opinion evidence, an ALJ may properly find that an opinion from a medical source who is not an "acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.[6]

*Id.*

**2. Analysis**

Ms. Wells is a Licensed Professional Counselor (L.P.C.), and Ms. Brandt is a Qualified Mental Health Provider (Q.M.H.P.). Plaintiff concedes that their opinions are "other" medical sources. The ALJ stated that he considered the opinions of both Ms. Wells and Ms. Brandt when assessing Plaintiff's RFC, but found that their descriptions of the severity of Plaintiff's limitations are inconsistent with his daily living activities, the objective findings of consultative

---

[6] Giving more weight to the opinion of a non-acceptable medical source over a treating medical source does not violate the treating source rules under 20 C.F.R. § 404.1527(d)(2).

evaluators, and Plaintiff's treatment records. Accordingly, the ALJ accorded "partial weight" to Ms. Wells's opinion and "little weight" to Ms. Brandt's opinion. Plaintiff contends that the ALJ improperly assigned controlling weight to the medical opinion of examining psychologist Shawn A. Johnston, Ph. D., instead of the opinions of Plaintiff's treating therapists, Ms. Wells and Ms. Brandt.

Ms. Wells primarily recorded Plaintiff's daily living activities in her treatment notes. She stated that Plaintiff often reported bathing only once every two weeks, drinking 3-4 beers daily, and often had suicidal ideations. On five separate occasions in 2012 Ms. Wells reported that Plaintiff either increased his activity level or is working toward increasing it. AR 449, 464, 471, 473, 475.

Ms. Brandt also recorded Plaintiff's daily living activities in her treatment notes including "self care activities" such as working on his ATV and walking his dog. AR 1448. Further, she reported that Plaintiff "was very interested in the employment information provided and was grateful for my and Emily's assistance. . . . He appeared more talkative and seemed to be engaged throughout session." Plaintiff canceled a counseling appointment because he was involved in a community service project in April and May 2015. AR 1449. He consistently reported that he was increasing social connections, motivation, energy, mood, and self-esteem.

Dr. Johnston opined that, from a psychological perspective, Plaintiff is capable of performing normal day- or work-week activities. AR 838. During this examination, Plaintiff reported that he gets up around 7:30 a.m., takes care of his dog, prepares meals, does occasional household chores, goes grocery shopping with his son, manages funds, and takes his medications. AR 836. He reported showering once a week or less. In the afternoons, he works on his and his son's two and four wheel bikes, and he reported that he goes to the Oregon Dunes

with his son to ride them. For transportation, Plaintiff reported that his son gives him rides or he takes the bus. *Id.*

On January 16, 2013, Ms. Wells described her treatment relationship with Plaintiff on a checkbox form titled Psychiatric/Psychological Impairment Questionnaire. AR 984-91. On the form, she indicated that she provided therapy to Plaintiff every two to four weeks between December 7, 2011 and December 30, 2013. Ms. Wells opined that Plaintiff's symptoms include "low mood/pervasive sadness, anhedonia, low energy, difficulty with motivation/concentration, hopelessness/helplessness, suicidal ideation, and difficulty meeting ADL's." AR 986. Ms. Wells also indicated that Plaintiff is incapable of tolerating even low stress work environments, and "even small changes to his situation have caused significant decompensation." AR 990. Accordingly, Ms. Wells diagnosed Plaintiff with recurrent and severe major depressive disorder, and she assigned him a Global Assessment of Functioning score of 45. AR 984. Ms. Wells also opined that Plaintiff was "markedly limited" in his abilities to complete a normal workweek without interruptions from psychologically based symptoms, to maintain socially appropriate behavior, and to set realistic goals or make plans independently. AR 987-89. Under the area of the form to "identify the laboratory and diagnostic test results which demonstrate and/or which support your diagnosis," Ms. Wells wrote "n/a." AR 985.

Ms. Brandt also described her treatment relationship with Plaintiff on a primarily checkbox-based form. AR 1495-97. Although she stated that she treated Plaintiff between December 8, 2011 and October 28, 2015, her treatment notes state that she first called Plaintiff to schedule an appointment as his new therapist on January 16, 2015. AR 1443. On the form, she stated that all of his limitations concerning concentration and persistence were unknown, but he had moderate to marked limitations in remembering locations and work-like procedures and

PAGE 15 – OPINION AND ORDER

understanding and remembering one-to-two step instructions. AR 1496. She also checked a box stating that "drug and/or alcohol use is not a material cause of this individual's disability because . . . my patient is currently not using drugs and/or alcohol." AR 1497.

On February 14, 2013, Dr. Johnston conducted a consultative psychological evaluation of Plaintiff including a clinical interview, a reading subtest from a Wide Range Achievement Test, a Mini Mental Status Exam, a Beck Depression Inventory II test, and a review of Plaintiff's medical records, which included Ms. Wells's treatment notes. AR 833-38. Dr. Johnston opined, in a detailed eight page analysis, that the results of this examination are consistent with the presence of "dysthymic disorder, characterized by at least two years of depressed mood, hypersomnia, and feelings of hopelessness." He also stated that Plaintiff's flow and content of his thoughts were within normal limits, and "his orientation, attention and abstractive ability were intact." AR 836. Further, Dr. Johnston opined that Plaintiff's reported substance use was inconsistent with the physician's and counselor's interviews, and his substance use likely interferes with the effectiveness of his depression medications.

Plaintiff is correct in that the ALJ must consider opinions from non-acceptable medical sources to determine the severity of Plaintiff's impairments and how they affect his ability to work. There is no evidence in Ms. Wells's or Ms. Brandt's opinions specifically regarding the severity of Plaintiff's mental impairments, however, that the ALJ has not accounted for in Plaintiff's RFC. Dr. Johnston's opinion, which is based upon objective testing and is documented in a thorough report, further elaborates beyond either Ms. Wells's or Ms. Brandt's opinions regarding the severity of Plaintiff's impairments. Dr. Johnston's opinion also differs from Ms. Wells's and Ms. Brandt's in that he opines that Plaintiff's mental health impairments and effectiveness of his mental health medications are exacerbated by substance use. Because

Dr. Johnston's opinion is supported throughout Plaintiff's treatment records including his activities of daily living, is based upon objective testing, and explains medical findings thoroughly, the ALJ's assignment of substantial weight to Dr. Johnston's opinion rather than Ms. Wells's or Ms. Brandt's opinions is supported by substantial evidence. An ALJ's reliance on an accepted medical source is a valid basis for discounting another source's contradictory opinion. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). Therefore, the ALJ has sufficiently provided reasons germane to Ms. Wells and Ms. Brandt to discount their opinions.

## C. Plaintiff's Subjective Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

PAGE 17 – OPINION AND ORDER

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." AR 30. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.*

Plaintiff contends that the ALJ gave insufficient reasons for discounting Plaintiff's subjective mental impairments. More specifically, Plaintiff argues that the ALJ simply noted that Plaintiff's impairments "must be viewed in light of the overall diagnostic record," and "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." Pl's Br. at 20 (quoting *Ghanin v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) and *Scott v. Astrue*, 647 F3d. 734, 739-740 (7th Cir. 2011)).

The ALJ relied on Dr. Shawn Johnston's opinion in finding that Plaintiff's mental symptoms were not as severe as he alleged. AR 33. An ALJ may reject a claimant's testimony when it is contradicted by a physician's findings. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Dr. Johnston indicated that Plaintiff reported an

"unusually high score for an individual outside of a psychiatric hospital setting and, given [his] presentation, history, and reported symptoms, suggests symptom exaggeration." AR 837. The ALJ gave significant weight to Dr. Johnston's opinion the Plaintiff was capable of understanding and remembering instructions, and could attend, concentrate, and persist. AR 33. Dr. Johnston stated that, from a psychological perspective, Plaintiff was capable of working a normal work week. AR 33. Plaintiff responded to Dr. Johnston's report stating that he failed to account for "previous head traumas," which cause "mental blackouts." AR 343. Plaintiff's subjective claims regarding these mental blackouts are unsubstantiated and not supported anywhere else in the record.

Furthermore, the ALJ considered Plaintiff's improvement in response to treatment and the work Plaintiff was able to do in working on the roof of his house, preparing his mother's house for sale, and taking public transportation. An ALJ can consider reports of a claimant's ability to engage in pursuits as evidence that a claimant's description of symptoms to the contrary might not be credible. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ provided clear and convincing reasons for finding parts of Plaintiff's testimony not credible and pointed to specific evidence in the record, including reports by examining physicians, to identify what testimony was credible and what evidence undermined Plaintiff's credibility.

### D. Vocational Expert Testimony

Plaintiff contends that the ALJ failed to present a hypothetical to the vocational expert at Plaintiff's hearing that accurately described Plaintiff's difficulties in social functioning and in concentration, persistence, or pace. The ALJ determined that Plaintiff has moderate difficulties with persistence, concentration, and pace, but the hypothetical presented to the vocational expert

limited Plaintiff to the performance of simple, routine, and repetitive tasks, without reference to Plaintiff's ability to concentrate over a period of time or persist at tasks. AR 28, 107.

The description in the hypothetical limiting Plaintiff to simple tasks adequately incorporates moderate limitations related to concentration and pace. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). Additionally, Dr. Kaper and Dr. Johnston did not opine that Plaintiff's limitations in concentration, persistence, and pace imposed an additional limitation on Plaintiff's ability to perform simple tasks. Rather, both doctors testified that Plaintiff would not have any limitations in performing such simple tasks. AR. 838. The ALJ's hypothetical, by restricting Plaintiff to the performance of simple tasks, adequately captures Plaintiff's restrictions relating to concentration and pace. Thus, the ALJ did not err in posing a hypothetical that limited Plaintiff to simple tasks but did not expressly describe limitations in concentration and pace.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 2nd day of October 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge